UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHELBY INDUSTRIAL PARK, INC., JOE BAIRD, RANDALL ROBINSON, RANDY'S AUTO SALES, LLC, ANTHONY J. BAIRD, TIM BAIRD, DEREK BROWN, GILL HADDIX, RODNEY R. JEFFRIES, WILLIAM E. NOAH, VICTOR NOEL, MARY C. SCOTT, WILLIAM S. WRIGHT, and NOAH STROUP, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:06-cv-1150-TWP-DML |
| THE CITY OF SHELYVILLE, INDIANA, SHELBYVILLE, INDIANA POLICE DEPT., OFFICER JAMES MICHAEL McCRACKEN, THE CITY OF INDIANAPOLIS, THE CITY OF INDIANAPOLIS POLICE DEPARTMENT, JAMES BEARD, THE NATIONAL INSURANCE CRIME BUREAU, OFFICER DAVID SCOTT, OFFICER JOHN RENBARGER, CAPTAIN RICK JOSEPH, DETECTIVE BRYAN REED, and DETECTIVE MARTHA HIGDON, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The current Motion for Summary Judgment before the Court in this unusual Section 1983 case pertains only to some of the more modest and less colorful claims in this case. On February 9, 2005, five police officers from Shelbyville, Indiana and Indianapolis, Indiana, assisted by James Beard, a private investigator, executed a search warrant at an industrial park in Shelbyville, Indiana. The officers were looking for an antique 1937 Lincoln Zephyr to determine whether its identification number had been altered. During the search, eleven identified people

1

and an unidentified group of Amish workers were detained. One officer used a submachine gun to hold six of the plaintiffs and the Amish workers at gunpoint during the search. In the end, the officers found no evidence of a crime. Ten individuals and two businesses then filed this suit against six police officers, two cities, and the private investigator and his employer. Plaintiffs allege violations of their federal Fourth Amendment rights and of state law.[1]

Specifically, private investigator, James Beard ("Beard"), and his employer, The National Insurance Crime Bureau ("NICB") (collectively for purposes of this Entry, "Defendants"), have moved for summary judgment on the claims brought by Randall Robinson, Joe Baird, Shelby Industrial Park, Inc., and Randy's Auto Sales, LLC (collectively for purposes of this Entry, "Plaintiffs"). For the reasons set forth below, Defendants' Motion for Summary Judgment [Dkt. 147] is **DENIED**.

## I. <u>BACKGROUND</u>

The following background section is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Plaintiffs as the non-movants. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Further, only the facts germane to the present motion are presented at this time.

Beard, a former police officer in Carmel, Indiana, began working at the NICB in 1982. Beard is now retired. The NICB is a not-for-profit organization funded by insurance companies, and assists law enforcement on a day-to-day basis investigating fraud and automobile theft.

---

[1] The preceding paragraph was, in large part, appropriated from Judge Hamilton's previous Entry. (Dkt. 110.) Moreover, that Entry contains a far more exhaustive statement of facts.

Given Beard's considerable expertise in vehicle identification, he sometimes accompanied law enforcement on searches. When doing so, Beard understood that he was permitted to enter private property "at the grace of the law enforcement who invites me to come in and assist them."

On February 8, 2005, Beard was invited by Officer James McCracken ("McCracken") – a co-defendant in this case – to assist with the inspection of a 1937 Lincoln Zephyr to determine if the vehicle maintained a proper Vehicle Identification Number ("VIN"). On that same day, the Shelby Circuit Court issued a search warrant, expressly permitting Beard to assist with the search. The next day, February 9, 2005, numerous police officers and Beard completed the search at the center of this dispute. Beard's role was relatively limited. Specifically, after the search warrant was served, Beard entered the warehouse housing the Zephyr, examined the VIN, and determined that it was not altered. At some point during the search, Plaintiff William Noah ("Noah") began observing Beard and Officer McCracken. Noah noticed that someone had pulled the cover off of a boat sitting roughly 30 yards away from the Zephyr. The boat was owned by Randall Robinson ("Robinson"). Significantly, the search warrant did not mention the boat. Defendants concede that for purposes of this Motion, "Beard was present when the [boat's] tarp was pulled back." [Dkt. 148 at 4]. Similarly, the Court's previous Entry noted, "[a] jury could infer that Beard. . . pulled the cover back during their search to take a better look at the boat." [Dkt. 110 at 23]. According to Noah, when Beard noticed that he was being watched, he "looked pissed and he threw his arms up in the air and looked at the other police officer."

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

The current dispute centers on qualified immunity. Beard claims he is entitled to it; Plaintiffs, of course, vigorously disagree. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Qualified immunity protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Courts have long recognized qualified immunity for "government officials" who face liability under 42 U.S.C. § 1983. And, under certain unique circumstances, courts have extended qualified immunity to private citizens. To determine whether a private citizen like Beard is entitled to qualified immunity, a two-part inquiry is warranted. First, the Court must resolve a predicate question: Is Beard even eligible to invoke a qualified immunity defense? Second, if he is, then the Court must determine whether or not he is actually entitled to qualified immunity, thus defeating Plaintiffs' federal claims. Each question is analyzed in turn below.

**A.     As a private citizen, is Beard even eligible to invoke a qualified immunity defense?**

It is undisputed that Beard, acting as a private investigator for the NICB at the time of the search, was not a "government official." But this fact does not automatically bar the invocation of a qualified immunity defense. On this point, the Supreme Court's decision in *Richardson v. McKnight*, 521 U.S. 399 (1997) is instructive. In *Richardson*, the Supreme Court concluded that private prison guards working for a for-profit prison management company were not entitled to use the defense of qualified immunity, but specifically left the door open for other private actors. *Id*. at 412-13. To that end, the Court noted that its determination was limited to the facts of that

case, specifically recognizing that this case *did not* "involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id*. at 413. In other words, *Richardson* did not conclusively answer whether an individual like Beard is eligible to raise a qualified immunity defense.

*Richardson* did, however, set out two paramount factors to consider when determining when a private person sued under 42 U.S.C. § 1983 may avail himself of the qualified immunity normally accorded to public officials. These factors are: (1) whether history reveals that a firmly rooted tradition of immunity is applicable to the type of private actor involved in the case; and (2) whether public policy justifications support the application of qualified immunity. *Id*. at 404; *see also Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 631 (7th Cir. 1999) (noting that the *Richardson* decision was anchored in two factors – history and public policy).

Here, good arguments exist on both sides of the ledger. Beard emphasizes that he was clearly performing a function traditionally within the exclusive province of state actors. In this sense, Beard was acting as "an adjunct to government in an essential governmental activity," evidenced by the fact that his name was included in the search warrant. Moreover, in a few pre-*Richardson* cases, the Seventh Circuit has granted qualified immunity to private actors. *See, e.g., Sherman v. Four County Counseling Center*, 987 F.2d 397 (7th Cir. 1993) (private hospital treating patient pursuant to court order entitled to qualified immunity); *Williams v. O' Leary*, 55 F.3d 320 (7th Cir. 1995) (private physician whose employer contracted with state prison to provide medical services entitled to assert defense of qualified immunity). As for public policy

considerations, Beard contends that precluding immunity would deter qualified experts like himself from assisting law enforcement. Beard also highlights that the NICB is a not-for-profit organization, and is therefore distinguishable from the for-profit organization at issue in *Richardson*. Indeed, *Richardson* reasoned that qualified immunity was practically superfluous because market pressures would drive safe and effective operations, including the minimization of damages stemming from Section 1983 lawsuits. *Id*. at 409-10. For this reason, Beard argues, the NICB's status as a not-for-profit is significant.

On the flip side of the coin, Plaintiffs emphasize that Beard has not presented any evidence as to how individuals in his situation were treated at common law. Plaintiffs bolster this argument by citing to *Willits v. Wal-Mart Stores, Inc.*, No. IP99-0276-C-M/S, 2001 WL 1028778 (S.D. Ind. July 30, 2001). In *Willits*, the court noted that the Wal-Mart employees seeking qualified immunity "failed to cite to any cases or historical evidence that would support their claim that private individuals conducting a search and seizure have historically enjoyed qualified immunity." *Id*. at *10. Without such evidence, the court concluded that the employees "have failed to establish that they are entitled to raise the defense of qualified immunity." *Id*. Finally, Plaintiffs argue that public policy considerations do not tilt in Beard's favor, emphasizing that although the NICB is a not-for-profit, it still has the same core incentives as any profit-seeking market participant. That is, the NICB is not a monopolist and it faces competition; thus, it must perform efficiently and effectively to retain business.

This case is a close call. If push came to shove, perhaps the Court would resolve the qualified immunity eligibility question in favor of Beard. He was, after all, working hand-in-hand with the police carrying out police activities pursuant to a search warrant. *Williams*, 55 F.3d

at 324 (applying qualified immunity; defendant was "performing duties that would otherwise have to be performed by a public official who would clearly have qualified immunity"). Fortunately for the Court, it need not definitively rule on this issue. As will be discussed below, even if Beard could raise a qualified immunity defense, it would fail on the merits, rendering this analysis altogether academic.

**B.   Beard is not entitled to qualified immunity under the circumstances**

Assuming *arguendo* that Beard can raise a qualified immunity defense, this does not mean that he is actually entitled to qualified immunity. The applicability of qualified immunity is determined by a two-part inquiry established in *Saucier v. Katz*, 533 U.S. 194 (2001), *modified by Pearson*, 129 S.Ct. 808. First, the court "must consider…this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Id*. at 201. Second, the Court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. The answer to both *Saucier* questions must be in the affirmative in order for plaintiff to defeat a motion for summary judgment on qualified immunity grounds.

The answer to the first question is straightforward. If a jury finds that Beard searched the boat, then he violated Robinson's Fourth Amendment rights because the warrant did not mention the boat and there was no indication that the boat evidenced criminal activity.

The answer to the second question (whether the constitutional right was clearly established) is also relatively cut-and-dried. A violation is "clearly established" where: (1) the violation is so obvious that a reasonable state actor would know that his actions violated the

Constitution; or (2) a closely analogous case establishes that the conduct is unconstitutional. *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001). Supreme Court precedent makes clear that Beard's alleged conduct – exceeding the scope of the search warrant by removing the boat's cover and examining it – violates "clearly established" constitutional rights. On this point, the Court's analysis begins and ends with *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, the Supreme Court held that an officer's actions – moving stereo equipment in order to locate serial numbers and determine if the equipment was stolen – had to be supported by probable cause, even though the officer was lawfully present at the apartment for an unrelated search and the stereo equipment was in plain view. Specifically, the Supreme Court ruled that moving the equipment constituted a new search, separate and apart from the original lawful search. *Id*. at 324-25. Moreover, the second search did not fall under the "plain view" exception to the warrant requirement because there was not probable cause to believe that the equipment was contraband or other evidence of a crime. *Id*. at 326-28. Here, Beard allegedly removed a boat cover under circumstances similar to those found in *Hicks*. At bottom, Beard's alleged removal of the boat cover and search of the boat violated "clearly established" constitutional rights.

There is one final wrinkle in this analysis. Specifically, Beard invites the Court to depart from the normal "clearly established" qualified immunity standard, arguing that he "should not be held to the same standard as a police officer" because he is merely a private citizen. [Dkt. 148 at 13]. Beard relies on two cases to support this position. *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 269 (E.D.N.Y. 2008) ("it would not be appropriate to apply the same standards to a private defendant as would be applied to an actual law enforcement official when gauging the objective reasonableness of the former's belief that probable cause existed" because "probable

9

cause is a concept that often confounds even professional law enforcement officials…"); *Rodriques v. Furtado*, 950 F.2d 805, 815 (1st Cir. 1991) (holding physician who assisted police with an investigation pursuant to a search warrant should be held to the standard of *"a reasonable physician"*; "[t]here is not duty imposed upon the physician to make inquiry of the officer regarding his basis for probable cause where the warrant is objectively facially valid.").

This argument is well-taken, but the Court is not persuaded. First, Beard has not identified any Seventh Circuit cases substituting a more forgiving standard in place of the *"clearly established"* standard. To the contrary, the Seventh Circuit has employed the *"clearly established"* standard in the context of private individuals. *See, e.g., Sherman*, 987 F.2d at 408 (employing *"clearly established"* standard to private psychiatric facility); *Payton*, 184 F.3d at 630 (citing *"clearly established"* standard in the context of private individuals). Second, as a practical matter, Beard's request is somewhat curious, given that he is a former police officer. Plainly stated, Beard knew the rules of the road; he cannot escape them just because he has traded his police uniform for civilian garb. Finally, on a related note, the Court is particularly wary of applying a more relaxed standard to private individuals who *frequently* engage in quintessential police activities. For this reason, the cases cited by Beard applying a more relaxed standard are inapposite. *Mejia*, 119 F. Supp. 2d at 269 (applying relaxed standard to private air cargo company); *Rodriques*, 950 F.2d at 815 (applying relaxed standard to physician). For purposes of receiving qualified immunity, if a private citizen *regularly* acts as a hired mercenary for the police, then he should be held to the same standard as any other police officer. For these

reasons, the Court declines to employ a relaxed standard to Beard. In turn, Beard is not entitled to qualified immunity.[2]

## IV. CONCLUSION

For the above reasons, Beard and the NICB's Motion for summary judgment [Dkt. 147] is **DENIED** and Plaintiffs' Fourth Amendment and state law trespass claims will proceed.

SO ORDERED: 02/25/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[2] Defendants also moved for summary judgment on Plaintiffs' state law trespass claims: "If Defendant Beard is entitled to qualified immunity on Plaintiffs' federal claims he should also be entitled to summary judgment on Plaintiffs' state law claims." [Dkt. 148 at 14]. The Court need not address this curious argument in detail. After all, Beard is not entitled to qualified immunity.

DISTRIBUTION:

Thomas R. Haley, III
JENNINGS TAYLOR WHEELER & HALEY
thaley@jtwhlaw.com,bbryan@jtwhlaw.com

Charles T. Jennings
JENNINGS TAYLOR WHEELER & HALEY
chuckj@jtwhlaw.com,bbryan@jtwhlaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com,hal@rucklaw.com

Susan L. Lee
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Jonathan E. Palmer
JONATHAN E. PALMER
jpalmerlaw@comcast.net,bkorb@boringandcoy.com

John C. Ruckelshaus
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org,bdoyle@indygov.org